IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § § § | No: 4:20CR349<br>Judge Mazzant |
| SHALOM OLUMIDE AYOTUNDE | § | |

### INFORMATION

**FILED**
JUL 1 – 2021
Clerk, U.S. District Court
Texas Eastern

THE UNITED STATES ATTORNEY CHARGES:

**Introduction**

At all times material to this Information:

1. Defendant, Shalom Olumide Ayotunde, lived in the Eastern District of Texas and the Northern District of Georgia.

2. Ayotunde owned and operated a business called "Peace Premium Autos," which was incorporated in Texas and Georgia.

3. Ayotunde had a close relationship with someone whose initials were "H.L." H.L. operated a business called Blu Interior Design & Logistics, based in the Southern District of Texas.

### Count One

Violation: 18 U.S.C. § 1542
(False Statement in Application for Passport)

Ayotunde Information
Page 1 of 9

On or about June 3, 2018, in the Eastern District of Texas and elsewhere, **Shalom Olumide Ayotunde**, the defendant, willfully and knowingly made a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, that is, in such application, the defendant provided false information about his identity, including a false name, date of birth, and Social Security Number, which statements he knew to be false.

In violation of 18 U.S.C. § 1542.

### Count Two

> Violation: 18 U.S.C. § 911
> (False Claim to United States Citizenship)

On or about June 3, 2018, in the Eastern District of Texas and elsewhere, **Shalom Olumide Ayotunde**, defendant, a citizen of Nigeria and therefore an alien in the United States, falsely and willfully represented himself to be a citizen of the United States.

In violation of 18 U.S.C. § 911.

### Counts Three and Four

> Violation: 18 U.S.C. § 1343
> (Wire Fraud)

The Scheme to Defraud

13. Victim 1 was in individual with initials "A.H.B." and who lived in Allentown, Pennsylvania.

14. Victim 2 was a business with initials "A.B.I." and was based in the Northern District of Georgia.

15. Victim 3 was a business with initials "T.T." and was based in the Southern District of California.

16. Beginning in or around May 2016, and continuing until in or around January 2018, in the Eastern District of Texas, the Northern District of Georgia, the Southern District of Texas, and elsewhere, defendant **Shalom Olumide Ayotunde** devised a scheme to defraud Victim 1, Victim 2, and Victim 3, by soliciting and receiving funds into a bank account he controlled, knowing that Victims were deceived into sending the funds by a fraudulent email scheme known as Business Email Compromise.

Purpose of the Scheme to Defraud

14. The purpose of the scheme was for defendant **Shalom Olumide Ayotunde** to unjustly enrich himself by obtaining wire transfers under false and misleading pretenses, including by making false statements about the legitimacy of Peace Premium Autos and Blu Interior Design and Logistics businesses with respect to the Victims and the intended use of the proceeds.

Manner and Means

15. In furtherance of the scheme, in or around May 2016, defendant **Shalom Olumide Ayotunde**, caused a fraudulent email containing false and misleading wire instructions to Victim 1 instructing $53,000 to be sent to Ayotunde d/b/a Peace Premium Autos.

16. In furtherance of the scheme, in or around January 2017, Ayotunde caused a fraudulent email containing false and misleading wire instructions to Victim 2 instructing $157,000 to be sent to Blu Interior Design & Logistics, an account under Ayotunde's direction.

17. In furtherance of the scheme, in or around January 2018, Ayotunde caused a fraudulent email containing false and misleading wire instructions to Victim 3 instructing $599,807.33 to be sent to Blu Interior Design & Logistics, an account under Ayotunde's direction.

18. Defendant **Shalom Olumide Ayotunde**'s scheme caused intended losses of at least $800,000, based on the wire transfers initiated by Victims 1, 2, and 3.

19. Beginning in or around January 2017, and continuing until in or around January 2018, in the Northern District of Georgia and elsewhere, defendant **Shalom Olumide Ayotunde**, on or about the dates specified below, did knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

Execution of the Scheme and Artifice to Defraud

20. On or about the date specified below, defendant **Shalom Olumide Ayotunde**, in the Northern District of Georgia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 3 | January 10, 2017 | Wire transfer from Victim 1 in Houston, Texas, in the amount of $157,000 to an account in the name of "H.L." but directed by **Shalom Olumide Ayotunde** at Fifth Third Bank, Brookhaven, Georgia. |
| 4 | January 17, 2018 | Wire transfer from Victim 2 in Los Angeles, California, in the amount of $599,807.33 to an account in the name of "H.L." but directed by **Shalom Olumide Ayotunde** at SunTrust Bank, Brookhaven, Georgia. |

All in violation of 18 U.S.C. § 1343.

### Count Five

Violation: 18 U.S.C. § 1014
(False Statement to Bank)

The Small Business Administration

21. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and

strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

22. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

The Paycheck Protection Program

23. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

24. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

25. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

26. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

Relevant Lenders

27. Wells Fargo Bank, JP Morgan Chase Bank, Eastern Bank, Citizens Bank, TD Bank, Santander Bank, Region Bank, and Bank of America were each federally-insured financial institutions with locations across the United States (collective, the Lenders). The Lenders participated in the SBA's PPP as a lender and, as such, were each authorized to lend funds to eligible borrowers under the terms of the PPP.

28. In or around June 2020, in the Northern District of Georgia and elsewhere, defendant **Shalom Olumide Ayotunde** knowingly made material false statements for the purpose of influencing the action of one of the Lenders, each one an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in

connection with sixteen (16) separate PPP loan applications requesting approximately $1,067,000, in that the defendant materially misrepresented and inflated the revenues and employees of each of those applicants, when in truth and in fact, as the defendant well knew, that information was false.

All in violation of 18 U.S.C. § 1014.

## Notice of Intention to Seek Forfeiture

Upon conviction of the offense in violation of 18 U.S.C. § 1343 and § 1014 as set forth in Counts Three, Four, and Five of this Information, the defendant, **Shalom Olumide Ayotunde**, shall forfeit to the United States of America, pursuant to 18 U.S.C. §§ 982(a)(2) and (a)(6), all property, real or personal, constituting, or derived from, the proceeds obtained, directly or indirectly, as a result of the respective offense; and any property used to facilitate, or intended to be used to facilitate, the commission of the respective offense.

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 982(a)(6) and 28 U.S.C. § 2461(c).

                Respectfully submitted,

                NICHOLAS J. GANJEI
                Acting United States Attorney

                /s/ Camelia Lopez
                Camelia Lopez
                Assistant United States Attorney
                Texas Bar No. 24036990
                101 E. Park Blvd., Suite 500
                Plano, TX 75074
                (972) 509-1201 – main
                (972) 509-1209 – fax
                Camelia.Lopez@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No: 4:20CR349<br>Judge Mazzant |
| | § § | |
| SHALOM OLUMIDE AYOTUNDE | § | |

## NOTICE OF PENALTIES

### Count One:

Violation:            18 U.S.C. § 1542

Penalty:              Imprisonment for a period not to exceed ten (10) years, a fine not to exceed $250,000, or both fine and imprisonment; a term of supervised release of not more than three (3) years.

Special Assessment:   $100

### Count Two:

Violation:            18 U.S.C. § 911

Penalty:              Imprisonment for a period not to exceed three (3) years; a fine not to exceed $250,000, or both fine and imprisonment; a term of supervised release of not more than three (3) years.

Special Assessment:   $100

### Counts Three and Four:

Violation:            18 U.S.C. § 1343

Penalty:              Imprisonment for a period not to exceed twenty years; a fine not to exceed $250,000, or both fine and imprisonment; a term of supervised release of not more than three years.

Special Assessment:   $100

### Count Five:

| | |
|---|---|
| Violation: | 18 U.S.C. § 1014 |
| Penalty: | Imprisonment for a period not to exceed thirty (30) years; a fine not to exceed $1,000,000, or both fine and imprisonment; a term of supervised release of not more than five (5) years. |
| Special Assessment: | $100.00 |